MARY M. REXFORD, Appellant, *v.* CYRUS W. REXFORD, Respondent.

(GENERAL TERM, THIRD DEPARTMENT, JANUARY, 1872.)

In order to authorize a court to declare a wife's conveyance invalid on the ground that its execution was procured by duress of her husband, the evidence of duress should be strong and clear.

If declarations made by the husband to the wife are relied upon to prove such duress, they should be of such a character as to establish, beyond any question, that she acted under an apprehension of personal injury or grievous wrong.

*Held,* accordingly, that threats made by a husband to his wife some time prior to her signing a deed by which her inchoate right of dower was conveyed to a third person, that if she did not sign the deed she should not live with him in peace, were not sufficient to invalidate her deed.

There is, it seems, no superior equity in favor of a grantor, whose deed is voidable for duress, against the purchaser for value, without notice.

A legal title of one who takes without notice of a prior equity, must, it seems, prevail over such equity.

Where a wife is introduced to the officer taking her acknowledgment to a deed by her husband, in the presence of his brother, both known to the officer, there is sufficient ground for his certificate of knowledge of the grantor; though if mistaken, the deed would be avoided.

Where the wife making an acknowledgment made no reply to the questions put by the officer as to the execution of the deed by her freely, &c.,—*Held,* that her assent might be implied from her silence.

THIS action was brought to set aside a deed, so far as it concerned the plaintiff, executed by herself and her husband to the defendant on the 21st day of December, 1864, of certain lands in Saratoga county, on the ground that she executed it under the influence of the threats of her husband, who died in December, 1867. The judge, before whom the trial was had, found as a fact that plaintiff's husband, before the deed was executed, requested her father to persuade her, to execute the deed, and directed him to state to her that if she did not sign the deed she would never have any peace with him as long as she lived, and that her father so stated to her as directed. The judge further found that the plaintiff at

first refused to sign the deed, but finally under such threats and influenced thereby did execute it.   The judge also found that the execution of the deed was duly acknowledged according to law by the plaintiff and her husband; was delivered to the defendant as a valid conveyance and accepted by him for a good and valuable consideration; and that the defendant paid such consideration, relying upon the validity of the conveyance and upon the acknowledgment and certificate.   As conclusions of law the judge decided and adjudged that the deed was valid, and that the plaintiff thereby duly released her inchoate right of dower in the premises, and is not entitled to dower therein; and that the complaint in the action be dismissed with costs.   Judgment was entered on the decision, and the plaintiff appealed.

*D. C. Beattie*, for the appellant.

*S. W. Jackson*, for the respondent.

Present—Miller, P. J., P. Potter and Parker, JJ.

By the Court—Miller, P. J.   Where parties occupy the relation of husband and wife, there should be strong evidence that the execution of a deed by the latter was procured by duress of the husband, to authorize a court to declare it invalid on that account.   If declarations made by the husband to the wife are allowed to interfere with her solemn act and deed, they should be of such a character as to establish beyond any question that she acted under an apprehension of personal injury or some grievous wrong.   If any other rule prevailed, there would be great hazard to purchasers in taking title under conveyances duly executed and acknowledged.

Mere threats of the character proved to have been made by the husband to the wife, who is the plaintiff in this case, for the purpose of inducing her to execute the conveyance to the defendant, cannot, I think, be regarded upon any legal principle as establishing such duress as vitiates the instrument.

At most, they were but strong means employed to influence the plaintiff, which unfortunately too frequently attend the conjugal relation, and are much to be condemned; but which do not constitute that legal duress which justifies the wife in repudiating her contract, and which exonerates her from the consequences of a deliberate act, which otherwise is lawful. The threats communicated to the plaintiff, and under the influence of which, it is claimed, the deed was executed, were to the effect that if she did not sign the deed she should not live with her husband in peace.

This was not enough to constitute legal proof of threats, which might reasonably and fairly create an apprehension of some grievous wrong or great bodily injury, or unlawful imprisonment. (1 Penn., 320.) They related to the domestic peace and happiness of the plaintiff, and nothing more, and the deed was executed some time after she had knowledge of her husband's views and wishes, and after ample opportunity had been furnished to reflect upon the subject.

The case cited from 26 N. Y., 9 (*Eadie* v. *Slimmon*), has no application. The threats there were not by the husband, but by a third party against the husband. He was charged with a high crime, and disgrace, conviction and imprisonment for a felony were threatened, which would inevitably ruin both the husband and the wife. After much excitement, terror and alarm, and a long discussion, and under apprehensions for the safety of the husband, the wife yielded to the pressure of the party in whose favor the instrument in question was executed. There are no such elements in the case under consideration, and the deed was not invalid as against the plaintiff for any such reason.

I also think that the acknowledgment of the deed was sufficient. The plaintiff was introduced to the officer as the wife of the grantor, and in the presence of his brother. Both the husband and his brother were acquainted with the officer. Knowledge of a person must depend, to a great extent, upon an acquaintance thus formed; and although such a casual introduction does not give such knowledge as is acquired by

frequently meeting a party, yet it furnishes some information from which knowledge may be derived, and hence the officer may properly certify that he knows the party as required by law. If he makes a mistake, the deed of course could be avoided; but if he is right, no one is injured. This question is decided in *Wood* v. *Bach* (54 Barb., 134), which is directly in point and conclusive.

The acknowledgment of the plaintiff before the officer was also sufficient; and the certificate of acknowledgment is conclusive, unless proved to be untrue. The plaintiff testifies that she made no reply to the question put to her by the judge when her husband was absent. Assuming this to be true, having signed the deed and expressed no dissent, her silence must be considered as an assent. As she had signed the conveyance, if she intended to repudiate her own act before the officer, it was her duty to speak and openly express her dissent. Actions often speak louder than words; and an individual who goes before an officer for the purpose of performing an act of this kind and manifests no objection, thereby furnishes tokens of assent, and conveys, in unmistakable language, the idea of acquiescence. In the present case it is apparent that the officer was thus induced to certify to her assent, and the plaintiff is now estopped from claiming that the act was invalid. If a different rule was allowed to prevail, officers authorized to take acknowledgments might easily be misled and deceived by an apparent acquiescence of the party, and title to real estate might be jeopardized and put in great peril.

If it be conceded that the testimony is conflicting upon the question whether the defendant actually purchased the farm and paid the consideration money expressed in the deed, there is not, I think, such a preponderance of evidence in favor of the defendant as to authorize this court to reverse the judgment upon this question of fact.

The statement of the defendant is positive and direct on this subject; and although there are some circumstances calculated to awaken suspicion, yet I am inclined to think they are not

strong enough to set aside entirely the defendant's positive evidence. The judge on the trial did not feel at liberty to hold that the defendant was not entitled to credit and had sworn falsely. As he heard and saw the witness testify, he had greater opportunities and was better qualified to judge than any appellate tribunal, and the conclusion at which he arrived should not be disturbed, except for the strongest and most satisfactory reasons.

It should be a very clear case which would justify this court in holding, under the circumstances, that the defendant was not entitled to credit, and that the judge upon the trial committed an error in believing his testimony. No such case is presented to us, and it is quite manifest that the finding of the judge upon this question should be sustained.

As the defendant was a purchaser for value of the premises in controversy, and the deed at most was not absolutely void for the alleged duress, I am inclined to think that the plaintiff has no right or equity as against the defendant.

The rule in equity is, that as between two parties having equal equities the prior equity must prevail. But if the party having the subsequent equity clothes himself with the legal title before he has notice of the prior equity, such legal title must prevail. (*Newton* v. *McLean*, 41 Barb., 285.)

The offer made by the plaintiff to prove the declarations of the husband to the wife before the execution of the deed, was not competent evidence. They was not a part of the *res gestæ*, but hearsay, and therefore inadmissible.

There was no error upon the trial, and the judgment must be affirmed with costs.

Judgment affirmed.